IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ABRAHAM B. MCFADDEN, )
)
Plaintiff, )
)
v. ) 1:14CV664
)
MS. NICHOLSON, )
)
Defendant. )

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court upon Plaintiff Abraham McFadden's motions for default judgment against Defendant Ms. Nicholson. (Docket Entries 22, 23.) Also before the Court are two motions to compel filed by Plaintiff. (Docket Entries 39, 40.) All matters are ripe for disposition. For the reasons stated herein, the Court will deny Plaintiff's motions to compel as moot. Furthermore, the Court will recommend that Plaintiff motion for default judgment (Docket Entry 22) be granted.[1]

## BACKGROUND

Plaintiff, a *pro se* prisoner, filed this § 1983 action against several Defendants regarding alleged sexual harassment and retaliation. (Docket Entry 2.) The undersigned recommended dismissal of all claims against all Defendants except Defendant Nicholson. (Docket Entry 3.) Subsequently, a summons was issued for Defendant Nicholson. (Docket Entry 17.) After

---

[1] The Court will recommend that Plaintiff's second motion for default judgment (Docket Entry 23) be denied as moot.

1

failing to answer or otherwise respond, Plaintiff sought entry of default against Defendant Nicholson which was granted. (Docket Entry 20.) Thereafter, Plaintiff filed a motion for default judgment which is now pending before the Court. (Docket Entry 22; *see also* Docket Entry 23.) Several hearings were held regarding the motion for default judgment. (Minute Entries dated 11/16/2016; 1/24/2017.) The Court then set this matter for an evidentiary hearing on the issues of liability and damages. (Docket Entry 32.) Plaintiff was instructed to bring all evidence of damages resulting from his alleged injuries. (*Id.*) Prior to the evidentiary hearing, Plaintiff filed two letter motions seeking to compel the North Carolina Department of Public Safety ("NCDPS") to provide Plaintiff with a copy of his medical records. (*See* Docket Entries 34, 35.) On February 15, 2017, an evidentiary hearing was held. Plaintiff and Defendant provided testimony in this matter.[2] However, Plaintiff's evidence was limited to his personal knowledge as he had no access to his medical records. The Court thereafter ordered the NCDPS to provide to the Court, for *in-camera* inspection, Plaintiff's prison records, specifically medical records from April 2014 through November 2014, and grievances filed between March 2014 and November 2014. (Docket Entry 37.) Plaintiff subsequently filed two motions to compel video surveillance and dental records. (Docket Entries 39, 40.) The Court obtained documents from the NCDPS on March 2, 2017, and reviewed the records for consideration of Plaintiff's motion for default judgment.

## DISCUSSION

Plaintiff seeks default judgment against Defendant Nicholson for her failure to answer or otherwise respond to his Complaint. Once entry of default has been entered pursuant to

---

[2] Defendant has not sought to set aside entry of default in this matter.

Federal Rule of Civil Procedure 55(a), Rule 55(b) permits entry of default judgment against properly served defendants who failed to file responsive pleadings. In determining whether to enter judgment on the default, "[t]he court must . . . determine whether the well-pleaded allegations in [Plaintiff's] complaint support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). Additionally, "[i]f the court finds that liability is established, it must then determine damages." *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012) (citation omitted). In its findings, "[t]he court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages." *Id.*

Here, Plaintiff's Complaint alleges the following pertinent facts:

Please be advised on 3-16-14, I Abraham B. McFadden filed a Grievance on [Defendant Nicholson] concerning sexual harassment. Once this took place [Defendant Nicholson] started a form of retaliation against me and informed other prisoners that I was a snitch . . . On 4-30-14 at 12:35 pm I was out in Rec cage with about 18 other prisoners when I asked [Defendant Nicholson] about my 6 month phone call that I was to be able to make every 6 months due to being on I-Con. When we began to talk about this she became very angry and began yelling out that I was a snitch and check off. And that I send her snitch notes all the time. She also said I was afraid to go to yard because I was gonna to get beat up. When I returned to cell, I wrote a grievance concerning this matter and wrote to our Governor Pat McCrory explaining the date and time concerning this matter . . . Due to [Defendant Nicholson] making such a statement, this has put my life in great danger, and shortly after her statements, I started receiving threats from other prisoners. Due to such threats I filled out rightful form to be kept in [protective custody]. This form was signed, and turned in to [Defendant Nicholson] by Sgt. Hasty. On 4/30/14, I found a note up under my door stating that if I returned to yard, I would be stabbed. On this same day, 4-30-14 at 8:40 p.m. I gave [the] note to Sgt. Hasty and she also have [Defendant Nicholson] the note as well. This fact Sgt. Hasty told me she would document if she was asked. Two days after [Defendant Nicholson] made statement on [the] rec yard, on 5-12-14 at 8:40 pm, I was returning from shower, when another prisoner sprayed human waste through the side of his cell door on me and a[n] officer, stating "this is what snitches get." This mater was also documented by my statement and officer's statements. That's when I knew for

3

sure that returning to yard after release from I-Con would be a great danger to me . . . On 7-10-14 at 4 pm med. call, I was returning to my cell when another inmate rushed in behind me, and started beating me in my head with his fist. Once he ran out my cell, I ran out behind him back downstairs. [Correctional Officer] Hunt told me if I reported the matter, I would get 6 more months in I-CON . . . Again on 7-22-14 at med call 4:00 p.m. I was getting water for meds at water fountain, when a guy walked up behind me and started beating me in my head. [Correctional Officer] Monrow and other staff responded to this, and sprayed the prisoner . . . I received big knots on my head in back, and at this time I can't get rid of headaches and very bad dizziness . . . .

(Compl. ¶ V, Docket Entry 2 at 3.)

The undersigned finds that Defendant Nicholson's failure to answer or otherwise defend against well-pled allegations in Plaintiff's Complaint are deemed admitted. *Ryan*, 253 F.3d at 780. However, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* (citation omitted). Thus, it is for the Court to determine whether the facts, as alleged, support Plaintiff's Motion for Default Judgment and the relief sought. *Id.* (citation omitted).

Here, the undersigned finds as a matter of law that Defendant Nicholson's calling Plaintiff a "snitch" in the presence of other prison inmates constituted "deliberate indifferent conduct." In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "'deliberate indifference' to inmate health or safety." *Id.* at 834 (citation omitted). In *Farmer*, the Supreme Court held:

4

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Id.* at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Rather, the "deliberate indifference" prong requires Plaintiff to make "two showings:"

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official action *must have* recognized that his actions were insufficient.

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citations omitted) (emphasis in original). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citation omitted).

The well-pleaded factual allegations in the Complaint demonstrate that Defendant called Plaintiff a "snitch" in the presence of other inmates which resulted in Plaintiff being assaulted on two occasions. It is not uncommon for inmates deemed "snitches" to likely be beaten by other inmates. *See e.g., Cullen v. Somerset Cty.*, No. CIV. A. WMN-10-0055, 2010 WL 2132794, at *3 (D. Md. May 25, 2010) (unpublished) ("Many courts have held that a § 1983 claim can stand against a prison official who spreads a rumor that an inmate was a 'snitch,' knowing that the inmate would probably be beaten by other inmates."); *Northington v. Marin*,

5

102 F.3d 1564, 1569 (10th Cir. 1996) ("[A]s the magistrate found, rumors about snitches spread rapidly and inmates rumored to be snitches will probably be beaten[.]"); *Miller v. Leathers*, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990) ("It is impossible to minimize the possible consequences to a prisoner of being labelled a 'snitch.'"). In the present case, the undersigned finds that Defendant Nicholson's conduct of labeling of Plaintiff as a "snitch" constitutes a "deliberate indifference" to the rights of Plaintiff, a violation of the Eighth Amendment. *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("[L]abeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate."). Thus, liability has been established against Defendant Nicholson. The issue now remaining is the amount of Plaintiff's damages.

Once liability has been established, the Court must determine the amount of damages owed to Plaintiff. The Prison Litigation Reform Act sets forth limitations when determining the amount of damages a prisoner may recover in civil actions. *See* 42 U.S.C. § 1997e(e). It states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" *Id.* Thus, a showing of more than *de minimis* physical injury could result in compensatory damages, and "[a] plaintiff's inability to prove out-of-pocket loss or monetary harm does not bar a claim for compensatory damages under § 1983." *Oxendine-Bey v. Harihan*, No. 5:12-CT-03084-FL, 2015 WL 5331809, at *7 (E.D.N.C. July 22, 2015) (unpublished), *report and recommendation adopted*, No. 5:12-CT-3084-FL, 2015 WL 5330571 (E.D.N.C. Sept. 14, 2015) (unpublished). "[I]n determining the propriety and amount of compensatory damages, courts look to factors such as loss of esteem, physical injury,

6

psychological counseling, loss of income, the degree of distress, the context of the underlying events, corroborative evidence, the nexus between the challenged conduct and the distress, and mitigating circumstances." *Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *4 (E.D.N.C. May 25, 2011) (unpublished) (citation omitted).

Here, the Court has considered the testimony of Plaintiff concerning his injuries suffered in the assaults alleged in the Complaint. The Court has also reviewed and considered the medical records of Plaintiff submitted for *in camera* inspection along with the Complaint. Plaintiff's medical records clearly show that he complained of headaches from being assaulted on two occasions in July 2014, consistent with the allegations in the Complaint and his hearing testimony. Plaintiff did not testify to any medical expenses that he incurred nor is there evidence of medical bills in his prison file. There is also no evidence that Plaintiff was earning any wages or other income that he lost as a result of not being able to work. Plaintiff's hearing testimony was that he was not working at the prison unit where he was housed at the time he was assaulted. As to pain and suffering, Plaintiff alleges in his Complaint and testified that he had knots on his head and experienced bad headaches and dizziness as a result of the assaults. It is undisputed that Plaintiff was treated for these injuries. Plaintiff testified that X-rays were taken of the area under his eye on October 22, 2104, and that the X-rays showed evidence of a broken bone under his eye. He also testified that he was told it was an old injury. Nothing in the medical records substantiate Plaintiff's testimony regarding a broken bone under his eye. The medical records tend to corroborate that Plaintiff sustained an injury to the back of his head causing bad headaches as a result of the assaults alleged in the Complaint. Therefore,

7

the Plaintiff has proven through his testimony and the medical records, the connection between the assaults upon him, the resulting injuries and damages he incurred.

After reviewing the record and considering the appropriate factors when determining damages, the Court concludes that Plaintiff is entitled to recover against Defendant Nicholson. Here, where plaintiff has proven liability by a preponderance of the evidence, Plaintiff is entitled to compensation for compensatory damages for his actual losses. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308-09 (1986). The Court first notes that Plaintiff, as an inmate in the custody of the NCDPS, has no out of pocket expenses for medical bills for treatment he incurred. Second, Plaintiff testified at the evidentiary hearing that he did not have a paid job at Scotland. Therefore, he is not entitled to receive reimbursement for lost wages. Next, Plaintiff does not allege nor seek other out of pocket damages that one might incur if he was not incarcerated such as travel expenses to and from the doctor for treatment. Plaintiff did not allege he was entitled to punitive damages, and after considering the propriety of awarding punitive damages, the undersigned recommends that none be granted. Plaintiff does allege and also testified to the physical injuries he received and the resulting pain and suffering arising from the conduct of the defendant. Plaintiff has proven that he sustained actual injury, including a blow to the back of his head that caused him to bleed and experience bad headaches which were corroborated by his medical treatment records. The undersigned recommends that Plaintiff's actual damages, including for pain and suffering, entitle him to $500.00.

Plaintiff's complaint also seeks relocation to a safe area. Plaintiff has been transferred to another prison and therefore this request is moot. He seeks medical treatment for his

8

injuries. The medical records demonstrate Plaintiff was treated for his injuries multiple occasions. Therefore, this request is also moot. Finally, Plaintiff's Complaint requests the Court to identify all constitutional rights in this matter. In the memorandum opinion, the Court has identified the constitutional provision and case law that supports the Court's decision. Therefore Plaintiff's request that the Court identify all constitutional rights in this matter is also moot.

As to Plaintiff's additional motions to compel filed after the February 15, 2017 evidentiary hearing, (Docket Entries 39 and 40) the Court finds that they are untimely and also moot. Thus, both motions will be denied.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for default judgment (Docket Entry 22) be **GRANTED IN PART**, such that default judgment be entered against Defendant Nicholson and Plaintiff be awarded $500.00 for damages incurred by Plaintiff. As to any other relief, **IT IS HEREBY RECOMMENDED** that the motion be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for default judgment (Docket Entry 23) be **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's motions to compel (Docket Entries 39, 40) are **DENIED** as untimely and moot.

_____
Joe L. Webster
United States Magistrate Judge

March 13, 2017
Durham, North Carolina